IN RE: JAKEL PITTMAN, A Minor Child, DOB: 10-03-99

No. COA01-349

(Filed 16 April 2002)

## 1. Child Abuse and Neglect— dispositional hearing—Miranda rights

The trial court did not err by denying defendant's motion to suppress a mother's statement to officers in a juvenile abuse and neglect dispositional hearing where the mother contended that the statement was obtained in violation of her Miranda rights. While the mother may attempt to suppress her statement in any subsequent criminal proceeding, she is barred from doing so in this civil proceeding where the overriding consideration is protection of the child's interests.

**2. Confessions and Incriminating Statements— juvenile dispositional hearing—parent's statement—voluntary**

A mother's statement to officers was admissible in a dispositional hearing to determine whether custody should remain with DSS where, assuming that Miranda applies, the mother was not a criminal defendant, was not in custody when she gave the statement, and the statement was voluntarily given.

**3. Child Abuse and Neglect— neglected juvenile—sufficiency of evidence**

The whole record presented clear, cogent, convincing, and competent evidence to support the court's ultimate findings and conclusions that a child was an abused juvenile, that his mother had inflicted serious, non-accidental injury, that his father had created or allowed a substantial risk of serious physical injury to the juvenile by other than accidental means, that the child was a neglected juvenile in that he lived in an injurious environment, and that his parents did not provide him with proper care.

Appeal by respondents from order entered 5 September 2000 by Judge Robert A. Evans in Nash County District Court. Heard in the Court of Appeals 22 January 2002.

*Nash County Department of Social Services, by Jayne B. Norwood, and Guardian Ad Litem Program, by Attorney Advocate Judith L. Kornegay, for petitioner-appellees.*

*Etheridge, Sykes, Britt & Hamlett, LLP, by J. Richard Hamlett, II, and Massengill & Bricio, PLLC, by Francisco J. Bricio, for respondent-appellants.*

EAGLES, Chief Judge.

James Pittman ("the father") and Lekeshia Harris ("the mother") appeal from a juvenile disposition order granting continued custody of their son, Jakel Pittman ("Jakel"), to the Nash County Department of Social Services ("DSS") and relieving DSS from making further reunification efforts with both parents. On appeal, the father and the mother assign error to the trial court's denial of the mother's motion to suppress and the court's findings of fact and conclusions of law. After a careful review of the record, briefs, and arguments of counsel, we affirm.

The evidence tends to show the following. Jakel was born on 3 October 1999. When Jakel was born, the father and the mother were unmarried, but living together. From 3 October 1999 to 6 January 2000, a three month period, Jakel was cared for by a number of individuals including the father, the mother, Jessie Pittman (paternal grandmother), Tecia Bryant, Catherine Carnegie, and Brenda Williams. As early as November 1999, Jessie Pittman noticed that Jakel had problems that required medical attention. Additionally, other caretakers noticed that Jakel experienced seizures and exhibited evidence of discomfort and distress. Jakel's caretakers brought his medical condition to both parents' attention.

On 6 January 2000, Jakel experienced a seizure while he was with his mother, however, the mother did not seek immediate medical attention for him. Instead, the mother drove to Rocky Mount, where she visited with relatives for several hours. Four hours after his first seizure, Jakel experienced a second seizure. The mother then took Jakel to Nash General Hospital's emergency room. On 7 January 2000, Jakel, three months old at the time, was transferred and admitted to Pitt County Memorial Hospital, where he was diagnosed with injuries to the head, legs (fractures), and spine. Doctors determined that the fractures of the right leg were older than those of the left leg. They also deemed Jakel's injuries non-accidental, and possibly the result of severe shaking, jamming, pushing, pulling, and jabbing.

Upon receipt of a Child Protective Services' referral, DSS began investigating Jakel's case. Due to the severe nature of the injuries, the Sharpsburg Police Department was included in the investigation. On 12 January 2000, Officer Joel Batchelor of the Sharpsburg Police Department and Kendra Holley of DSS interviewed Jakel's parents. Both parents denied harming the child.

Subsequently, on 27 January 2000, Officer Batchelor interviewed the parents again. In separate interviews, the father again denied harming Jakel, however the mother started crying and signed a statement that stated in part:

Jakel was cr[y]ing and I was tr[y]ing to get him to sleep. I was having a hard time getting him to sleep. It was frustrating. While I was rocking Jakel I rocked and bounced him to[o] hard. After I calmed down the baby calmed down. Shortly after this is when the baby started having seizures. . . . I never told any of the doctors I rocked and bounced Jakel to[o] hard. I'm sorry I hurt my

**IN RE PITTMAN**

[149 N.C. App. 756 (2002)]

baby and I didn't do it on purpose. I would like to get some help so I don't hurt my baby any more.

Though the statement was in Officer Batchelor's handwriting, it was signed by the mother.

As a result of the investigation, the mother was charged criminally with felony child abuse, and DSS filed a juvenile petition alleging that Jakel was abused and neglected. Ultimately, an adjudicatory hearing for the abuse and neglect allegations was held on 8 and 16 June 2000 in Nash County District Court, the Honorable Robert Evans presiding. During the hearing, evidence was presented that the mother injured Jakel by non-accidental means and that both parents were negligent and reckless in caring for Jakel. At the conclusion of the hearing, the trial court entered an adjudicatory order concluding that

2. The minor child . . . is an abused juvenile as defined by N.C.G.S. § 7B-101(1)a in that his mother . . . inflicted upon him a serious physical injury by other than accidental means.

3. The minor child . . . is an abused juvenile as defined by N.C.G.S. § 7B-101(1)b in that his father . . . created or allowed to be created a substantial risk of serious physical injury to the juvenile by other than accidental means.

4. The minor child . . . is a neglected juvenile as defined by § 7B-101(15) in that his parents . . . do not provide him with proper care and in that he lives in an environment injurious to his welfare,

and ordering custody of Jakel remain with DSS pending disposition.

On 18 July 2000, a dispositional hearing was held before Judge Evans. By order entered 5 September 2000, the trial court concluded that it was in the best interest of Jakel that he remain in the legal custody of DSS, and the court relieved DSS of further reunification efforts with the parents. Both parents appeal.

As a preliminary matter, we note that both the father's and the mother's notices of appeal indicate that the parents are appealing from the trial court's dispositional order entered on 5 September 2000. However, in their briefs, the parties assert and argue alleged error arising from the trial court's earlier adjudicatory order. Nevertheless, in our discretion under Rule 21 of the North Carolina

Rules of Appellate Procedure, we choose to address the merits of the parents' appeal.

**[1]** In the parents' first assignment of error, the mother argues that the trial court erred in denying her motion to suppress the statement that she made to Officer Batchelor. Specifically, the mother contends that the statement was obtained in violation of her Fifth Amendment right against self-incrimination as defined by *Miranda v. Arizona*, 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 706-07 (1966). We disagree.

Here, the issue is whether *Miranda* is applicable to a civil juvenile abuse and neglect proceeding. *See State v. Adams*, 345 N.C. 745, 748, 483 S.E.2d 156, 157 (1997) ("The filing of a petition alleging abuse and neglect commences a civil proceeding"). The Fifth Amendment of the United States Constitution provides that no person "shall be compelled *in any criminal case* to be a witness against himself." (Emphasis added.) By its own terms, the Fifth Amendment applies only to criminal cases.

In our legal system, a criminal defendant is entitled under the Fifth Amendment, "as incorporated by the Fourteenth Amendment, to remain silent and to refuse to testify." *State v. Ward*, 354 N.C. 231, 250, 555 S.E.2d 251, 264 (2001); N.C. Const. art. I, § 23. To ensure these rights, the United States Supreme Court developed procedural safeguards to protect a person's right not to be compelled to incriminate himself under the Fifth Amendment. *Miranda*, 384 U.S. at 444-45, 16 L. Ed. 2d at 706-07. These *Miranda* warnings are required when a criminal defendant is subjected to a custodial interrogation, and failure to give the required warnings prior to interrogation precludes admission of statements obtained during the interrogation. *See State v. Young*, 65 N.C. App. 346, 348, 309 S.E.2d 268, 269 (1983).

Generally, *Miranda* applies only when the defendant is subject to a criminal proceeding. 2 Wayne R. LaFave, *Criminal Procedure* § 6.10(e), at 625-26 (2d ed. 1999). Because a juvenile abuse and neglect proceeding is a civil proceeding, we hold that *Miranda* is inapplicable. *See State v. Adams*, 345 N.C. 745, 483 S.E.2d 156 (holding defendant's Sixth Amendment right to counsel, which applies only to criminal cases, did not attach when juvenile petition for abuse and neglect was filed).

We acknowledge the mother's argument that because an abuse and neglect proceeding can result in removal of a child from a par-

ent's custody, a parent's constitutionally protected interest is at stake. However, the common thread running throughout the Juvenile Code, § 7B-100 *et seq.*, is that the court's primary concern must be the child's best interest. *See In re Shue*, 63 N.C. App. 76, 81, 303 S.E.2d 636, 639 (1983), *modified*, 311 N.C. 586, 319 S.E.2d 567 (1984). When determining the best interest of a child,

> any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court to exclude cumulative testimony. Without hearing and considering such evidence, the trial court cannot make an informed and intelligent decision concerning the best interest of the child.

*In re Shue*, 311 N.C. 586, 597, 319 S.E.2d 567, 574.

Here, the child's interest in being protected from abuse and neglect is paramount. While the mother is not prevented from attempting to suppress her statement to Officer Batchelor in any subsequent criminal proceeding, the mother is barred from doing so in this civil proceeding where the protection of the child's interests, as distinguished from the mother's interests, is the overriding consideration. *See Price v. Howard*, 346 N.C. 68, 72, 484 S.E.2d 528, 530 (1997) (a parent's well-established constitutional "interest in the custody and care of the child is balanced against the state's well-established interest in protecting the welfare of children").

Additionally, we note the mother's contention that G.S. § 7A-631 applies to protect her right against self-incrimination. Section 7A-631 provided that the trial court in an adjudicatory hearing shall protect a parent's privilege against self-incrimination, *inter alia*; however, § 7A-631 was repealed effective 1 July 1999. 1998 N.C. Sess. Laws ch. 202, § 5. Here, the events surrounding Jakel's injuries and the trial all transpired after 1 July 1999. Hence, we are not persuaded by the mother's argument.

[2] Nevertheless, even assuming arguendo that *Miranda* applies here, we still hold that the mother's statement is admissible because the mother is not a criminal defendant in this proceeding, she was not in custody when she gave the statement, and the statement was voluntarily given. Prior to the adjudicatory hearing, the mother filed a motion to suppress her statement to Officer Batchelor on the grounds that her *Miranda* rights were violated and the statement was "involuntary and coerced." After a *voir dire* hearing on the motion, the trial

court denied the motion to suppress and found that the mother "voluntarily gave" the statement and concluded that "[l]ooking at the totality of the circumstances . . . I am going to allow the statement in."

This Court's review of a trial court's denial of a motion to suppress in a criminal proceeding is strictly limited to a determination of whether the court's findings are supported by competent evidence, even if the evidence is conflicting, and in turn, whether those findings support the court's conclusions of law. *See State v. Corpening*, 109 N.C. App. 586, 587-88, 427 S.E.2d 892, 893 (1993); *see also State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001). The review here, assuming arguendo that *Miranda* applies, should be no less stringent.

On appeal, the mother first argues that the trial court erred in failing to find whether she was "in custody." The appropriate inquiry in determining whether a defendant is "in custody" for purposes of *Miranda* is, based on the totality of the circumstances, whether there was a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Buchanan*, 353 N.C. at 339, 543 S.E.2d at 828.

Our review of the record shows that on 27 January 2000, Officer Batchelor telephoned the mother and asked her to come to the police station. The mother agreed and voluntarily drove herself there. Once she arrived, Officer Batchelor took her to his office for questioning. During the questioning, the mother again denied harming Jakel. Then, in the mother's presence, Officer Batchelor asked another officer to pick up the father and bring him in for questioning. When the father arrived, the mother was accompanied by an officer to a neighboring building where she was left by herself in an unlocked room. During his questioning, the father again denied harming Jakel.

After questioning the father, Officer Batchelor went to the neighboring building to accompany the mother back to his office. While walking back to the office, the mother saw the father getting into a police squad car. During her subsequent questioning, the mother started crying and gave a statement to Officer Batchelor, which he reduced into writing and she signed, admitting that she injured Jakel by non-accidental means.

We recognize that the mother presented testimony that Officer Batchelor used duress, coercion, and harassment to obtain her state-

ment. However, Officer Batchelor testified and denied the mother's claims. "If there is a conflict between the state's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal." *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982). Here, the trial court resolved the conflict by finding the mother's testimony about alleged duress, coercion, and harassment not credible.

Accordingly, we conclude that based on the totality of the circumstances the mother was not subjected to a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." In fact, the mother admitted on two occasions during her *voir dire* testimony that she believed that she was free to leave the police station at any time. Since the mother did not argue custody below and competent evidence supports the fact that the mother was not "in custody," we conclude that the trial court did not err in failing to make explicit findings on the custody issue. *See State v. Hicks*, 79 N.C. App. 599, 601, 339 S.E.2d 806, 808 (1986) ("Where the court's decision is clear from the record, the absence of a formal ruling is not prejudicial").

The mother next argues that the trial court erred in denying her motion to suppress the statement based on voluntariness. The test to determine the admissibility of a defendant's confession under *Miranda* is whether the confession is voluntary under the totality of the evidence in the case. *See State v. Leak*, 90 N.C. App. 351, 354, 368 S.E.2d 430, 432 (1988). Here, competent evidence in the record reflects that based on the totality of the evidence the mother voluntarily drove herself to the police station and voluntarily gave the statement. Accordingly, we conclude that the trial court's findings are supported by competent evidence and those findings support the court's conclusions in denying the motion to suppress.

[3] In the parents' remaining assignments of error, the father and the mother contend that there was insufficient evidence to support certain findings of fact and conclusions of law of the trial court. After careful review, we disagree.

Allegations of abuse and neglect must be proven by clear and convincing evidence. *See* G.S. § 7B-805. "A proper review of a trial court's finding of [abuse and] neglect entails a determination of (1) whether the findings of fact are supported by 'clear and convincing evidence,' and (2) whether the legal conclusions are supported by the

findings of fact." *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (citations omitted). "In a non-jury [abuse and] neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). "Our review of a trial court's conclusions of law is limited to whether they are supported by the findings of fact." *Id.*

Here, the parents argue that the evidence was insufficient to support the following findings of the trial court: (1) that the "parents were unable to reconstruct for *social worker Kendra Holley, law enforcement, and medical personnel* with consistent credible information who cared for [Jakel] during that three month period, which given the child's young age the court finds incredible;" (2) that the parents could not construct for the court a scenario whereby Jakel could have sustained such serious physical injuries; (3) that the manner in which the parents sought out care for Jakel was negligent, reckless, and inconsistent with the proper care and nurturing of an infant Jakel's age; (4) that Jakel did not receive proper care from his parents and lived in an environment injurious to his welfare; (5) that given Jakel's age, the nature of his injuries, and the volatile relationship between the parents, the father knew or should have known, and created or allowed to be created, a substantial risk of serious physical injury to Jakel by other than accidental means; (6) that the father knew or should have known that Jakel was in need of medical attention; (7) that on the day Jakel was admitted to the hospital, the mother did not immediately seek medical attention but rather visited with relatives for four hours before taking Jakel for medical care; (8) that the mother inflicted upon Jakel serious physical injury by other than accidental means; (9) that the mother freely and voluntarily, without coercion, gave a statement to law enforcement admitting that she had shaken Jakel too hard and that she never told doctors that she had injured Jakel; and (10) that in light of her admission, the mother failed to give medical personnel sufficient information to make medical decisions regarding Jakel. Additionally, the parents object to the court's conclusions of law that Jakel was abused and neglected within the meaning of G.S. §§ 7B-101(1)a, 7B-101(1)b, and 7B-101(15). After a careful review of the record, we conclude that the parents' arguments are without merit.

While there may be some evidence in the record that might support contrary findings, the whole record presents clear, convincing,

competent evidence to support the trial court's ultimate findings, and the trial court's findings support its conclusions. Here, the parents stipulated at the adjudicatory hearing that "there are days, and . . . even weeks, where the investigation will not be able to answer . . . who had possession [of Jakel] other than the days [social worker Holley] indicated." Furthermore, as evidenced in DSS reports, social worker Holley's testimony, Officer Batchelor's testimony, Dr. Rebecca Coker's testimony, and Jakel's medical records, the parents failed to furnish a detailed account or proper medical history to credibly explain Jakel's injuries.

Moreover, the record reflects that Jakel was three months old when he was admitted to the hospital; that the father, the mother, and Jakel lived in the same residence; that the father and the mother had a volatile relationship and were involved in multiple arguments; that both parents were aware that Jakel had a medical condition; that on 6 December 1999, the father was contacted and notified that Jakel "stiffened up like he wasn't breathing;" that the father took Jakel to the hospital; that on 3 January 2000 the father and the mother took Jakel to the emergency room because Jakel "stiffen[ed] up and was crying almost inconsolably;" that after several hours the parents left the emergency room without Jakel being seen by medical personnel because they were "tired of waiting;" that neither parent obtained later treatment for Jakel after the 4 January visit; that on 6 January 2000 Jakel had two seizures; that the mother visited with relatives for four hours before taking Jakel to the hospital; that the nature of Jakel's injuries was serious; and that Jakel's injuries had been inflicted over a period of time as shown by their different stages of healing. This clear and competent evidence supports the trial court's findings. Additionally, the remaining findings regarding the mother's statement to police and the mother's non-accidental injuring of Jakel, which we discussed in depth above, are supported by ample clear, convincing, competent evidence in the record. Accordingly, we hold that there was sufficient competent evidence to support the trial court's ultimate findings of fact. We also hold that the trial court's findings support its conclusions that Jakel was abused and neglected within the meaning of G.S. §§ 7B-101(1)a, 7B-101(1)b, and 7B-101(15).

We have considered the father's argument that the evidence was insufficient to support the findings and conclusions that he abused, neglected, or negligently provided care for Jakel. However, there is competent evidence showing that the father lived in the same residence with Jakel; that the father knew his son had a medical condi-

tion; that the father took Jakel to the hospital; that the father left the hospital on a second occasion without Jakel being seen; that the father did not obtain subsequent medical treatment for his son; and that Jakel's injuries were serious and had been inflicted over a period of time. "In general, treatment of a child which falls below the normative standards imposed upon parents by our society is considered neglectful." *In re Thompson*, 64 N.C. App. 95, 99, 306 S.E.2d 792, 794 (1983). Moreover, "[i]t is settled law that nonfeasance as well as malfeasance by a parent can constitute neglect." *In re Adcock*, 69 N.C. App. 222, 224, 316 S.E.2d 347, 348 (1984). Here, evidence of the father's nonfeasance supports the court's findings and conclusions as to him.

Finally, the mother argues that the evidence was insufficient to support certain findings of fact and conclusions of law in the trial court's dispositional order. At the disposition stage, the trial court solely considers the best interests of the child. *See In re Dexter*, 147 N.C. App. 110, 114, 553 S.E.2d 922, 924 (2001); *see also* G.S. § 7B-1110. "Nonetheless, facts found by the trial court are binding absent a showing of an abuse of discretion." *Id.* at 114, 553 S.E.2d at 924-25. Here, we conclude that the trial court did not abuse its discretion, and there is sufficient evidence to support the trial court's findings and conclusions on disposition.

In sum, we hold that a parent is prevented from invoking *Miranda* in a civil juvenile abuse and neglect proceeding. Here, even assuming arguendo that *Miranda* applies, we conclude that the trial court made appropriate findings of fact and conclusions of law in ruling that the mother's rights under *Miranda* were not violated. Additionally, we hold that the trial court's findings of fact are supported by clear, competent evidence in the record, and the trial court's findings support its conclusions. Thus, we affirm the trial court's adjudication and disposition in this matter.

Affirmed.

Judges CAMPBELL and SMITH concur.