HUNTER, Judge.
Respondent-mother presents the following issues for our consideration: Did the trial court (I) abuse its discretion in denying her motion to dismiss at the close of petitioner's *51 evidence; (II) erroneously conclude her son was neglected and dependent; and (III) abuse its discretion in ordering the custody of her son to remain with the Johnston County Department of Social Services ("DSS"). After careful review, we reverse the order below as to the mother only.
On 24 January 2004, J.A.G., a three month old infant, suffered a severe head injury while in the sole care of his father. J.A.G. had no prior injuries and there were no prior concerns regarding abuse, neglect, or dependency. An abuse, neglect, and dependency petition was filed against both parents and, in a 30 April 2004 order, the trial court determined J.A.G. was neglected and dependent as to his mother, and was abused, neglected, and dependent as to his father. The father is not a party to this appeal.
At the time of his injuries, J.A.G. resided with his mother and his father who were unmarried and unemployed. On 22 January 2004, J.A.G. returned home at approximately 5:00 p.m. after spending the previous night with his maternal grandmother. J.A.G. was acting normally and appeared to be fine. The maternal grandmother informed the mother that she had seen J.A.G. roll over. This was the first time anyone saw J.A.G. roll over on his own. Later that evening, the mother went to the grocery store with her sister and niece at approximately 8:30 p.m. The father remained at home and took care of J.A.G. The father contended he placed J.A.G. on the sofa and went to the kitchen to prepare J.A.G.'s bottle. When the father returned to the sofa, he found J.A.G. on the floor, lying on his back and crying. The baby's arms and legs began to twitch. Although the father contended J.A.G. was injured by a fall from the sofa, a medical expert testified J.A.G.'s injuries could not have resulted from a fall from a sofa onto a rug and carpet. After J.A.G. began to twitch, the father called the mother on her cell phone and explained what happened. As the father did not speak English very well, the mother called emergency personnel and immediately went home.
Upon arriving home, the mother took J.A.G. from his father's arms. While awaiting the arrival of the ambulance, J.A.G. began having a seizure. The paramedics determined J.A.G. needed to be airlifted to Pitt Memorial Hospital for assessment and treatment. Dr. Elaine Cabinum-Foeller assessed J.A.G. and determined he had a subdural hemorrhage in the front part of his brain, a portion of his brain had swollen, and he had a prominent retinal hemorrhage. In her expert opinion, Dr. Cabinum-Foeller opined J.A.G.'s injuries were not consistent with a short fall off of a sofa onto a rug and carpet; rather, she opined his injuries were caused by an inflicted traumatic brain injury. Due to his injuries, J.A.G. was at risk for developmental problems and long-term monitoring would be required. At the time of the hearing, the social worker testified that J.A.G. did not have any visible external injuries and that he was moving his extremities as would be expected for a child his age (six months old).
While J.A.G. was in the hospital, DSS informed the mother that J.A.G. would not be allowed to return home, and asked for names of individuals that could be appropriate placements for J.A.G. The mother provided DSS with several names; however, DSS determined none of those potential placements were appropriate. Therefore, a nonsecure custody order was entered on 30 January 2004 placing J.A.G. in DSS's custody, and J.A.G. entered foster care after his discharge from the hospital.
On 30 January 2004, DSS filed a juvenile petition against the mother and father alleging J.A.G. was abused, neglected, and dependent. On 30 April 2004, the trial court entered an adjudication order which concluded J.A.G. was neglected and dependent as to the mother, and abused, neglected, and dependent as to the father. On the same date, the trial court entered a disposition order which stated J.A.G. would remain in the custody of DSS and relieved DSS of any reunification efforts with the father. The trial court did not cease reunification efforts with the mother, and she was allowed visitation. The mother appealed the trial court's orders; however, the father did not appeal. Shortly after J.A.G.'s release from the hospital, his father was arrested on 2 February 2004 and charged with felony child abuse.
*52 The mother first contends the trial court abused its discretion in denying her motion to dismiss the abuse, neglect, and dependency allegations at the close of petitioner's evidence. After the trial court denied the motion, the mother presented evidence and then renewed her motion to dismiss. Upon the renewal of the motion to dismiss, the trial court dismissed the abuse allegation, but denied the mother's motion on the remaining allegations. Instead of dismissing the abuse allegation at the close of all evidence, the mother argues the trial court should have dismissed the abuse allegation at the close of petitioner's evidence. We conclude this argument is moot.
"A case is `moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." Roberts v. Madison County Realtors Assn., 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996). As the trial court dismissed the abuse allegation at the close of all evidence, whether the trial court should have dismissed the abuse allegation at the close of petitioner's evidence will have no practical effect on this case. Indeed, the trial court only concluded the child was neglected and dependent as to the mother. Moreover, under N.C.R. Civ. P. 41(b), the trial court has the discretion to decline to rule upon a motion to dismiss until the close of all evidence. N.C. Gen.Stat. § 1A-1, Rule 41(b) (2003) states in pertinent part:
After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all evidence.
Id. (emphasis added).
Next, the mother challenges several findings of fact and a conclusion of law regarding the trial court's determination that J.A.G. was neglected. "The allegations in a petition alleging abuse, neglect, or dependency shall be proved by clear and convincing evidence." N.C. Gen.Stat. § 7B-805 (2003). "`A proper review of a trial court's finding of ... neglect entails a determination of (1) whether the findings of fact are supported by "clear and convincing evidence," and (2) whether the legal conclusions are supported by the findings of fact.'" In re Pittman, 149 N.C.App. 756, 763-64, 561 S.E.2d 560, 566 (2002) (citations omitted). "Clear and convincing evidence `is greater than the preponderance of the evidence standard required in most civil cases.' It is defined as `evidence which should "fully convince."'" In re Smith, 146 N.C.App. 302, 304, 552 S.E.2d 184, 186 (2001) (citations omitted).
First, the mother challenges the portion of Finding of Fact 8, which states: "The Court further finds that infarctions suffered by the child is a permanent [sic] as those brain cells will not regenerate." We conclude this finding of fact is supported by clear and convincing evidence. Dr. Elaine Cabinum-Foeller, an expert in pediatric medicine and child abuse, testified that J.A.G. had a "defuse infarction or an area where the brain had not gotten good oxygen flow or blood supply for a period of time ... that area of the brain was probably going to die." She explained that with an infarction, part of the brain tissue begins to swell, will become damaged, and will either scar down or just go away. The damaged portion of the brain typically will not regenerate. Based upon this expert testimony, the trial court's finding of fact that the areas effected by the infarctions will not regenerate is supported by clear and convincing evidence.
The mother also argues "the trial court inappropriately found that the parents had neglected in the past to ensure that the child was appropriately cared for." The mother contends this finding is not supported by clear and convincing evidence because the evidence indicates the infant did not have any prior injuries, was developing appropriately, had only lived in one residence, and had never missed any medical appointments with his pediatrician.
Finding of Fact 10 states in pertinent part:
*53 The Court further finds that there exists concerns [sic] as to the parents ability to supervise the juvenile based upon a previous instance whereby the child fell out of a swing while under the care of the parents. Based upon the mother's testimony describing the child's previous fall from an infant swing, the Court finds that the fall was minor and that the child was not injured. The Court further finds that the injuries diagnosed on or about January 22, 2004 were not a result of the child falling out of the infant swing. The Court further finds that on or about January 22, 2004, the child did have a crib in the family home, however the crib was not utilized by the father on that occasion and further finds that the parents had previously placed the child on the sofa without appropriate restraint or pillows. The Court further finds that the injuries suffered by the juvenile were not consistent with the child falling off of the sofa and that the parents have neglected in the past to ensure that the juvenile was appropriately cared for.
Our review of the pertinent portion of finding of fact 10 indicates the trial court's finding that J.A.G. had not been appropriately cared for in the past was based upon the parents' habit of placing J.A.G. on the sofa without surrounding the infant with pillows or other forms of restraint.
Our review of the transcript indicates the mother testified that she and the father would normally lay J.A.G. on the sofa with his back or side parallel to the back of the sofa. She also testified that she neither placed any devices on the sofa to prevent J.A.G. from falling off nor placed any pillows in front of the sofa in the event J.A.G. did roll off. However, J.A.G. was unable to roll over, and was not otherwise mobile, during the prior instances when the parents placed him on the sofa. Furthermore, it is not unusual for parents to place an immobile infant on a sofa, couch, or bed. Moreover, the evidence also indicates that J.A.G. had never missed any doctor's appointments, was developing appropriately, and had no prior injuries. Thus, we conclude the finding of fact that the parents had neglected in the past to appropriately care for J.A.G. is not supported by clear and convincing evidence as it pertains to the mother.
Next, the mother challenges a portion of finding of fact 10, which states: "The Court further finds that while the JCDSS was attempting to make a plan of care, the parents were not willing to investigate the needs of the child in [a] safe environment." In Finding of Fact 10, the trial court states:
The JCDSS attempted to work with the parents to identify alternative care arrangements for the juvenile. The mother informed JCDSS that she wanted to contact the relatives before they were explored as placement considerations by JCDSS. At the time of the child's discharge, the parents had provided names to the JCDSS for alternative care, however due to the timing of the parents providing the names to JCDSS, JCDSS did not have sufficient time to fully explore those placements prior to the discharge.
J.A.G. was in the hospital for one week, 22 January 2004 through 30 January 2004. DSS became involved on 23 January 2004. During the week, DSS discussed with the mother and father possible relatives who could care for J.A.G. in the event he could not return home on discharge from the hospital. The mother provided DSS with the names of two relatives; however, DSS did not approve these relatives as appropriate placements. The mother then provided at least two additional names, but DSS could not conduct a home study on these individuals prior to J.A.G.'s discharge from the hospital. Thus, in one week, the mother provided DSS with at least four names of individuals who could potentially care for J.A.G., if necessary. Based upon this evidence, we conclude the trial court's finding of fact that the mother was not willing to investigate the needs of the child in a safe environment is not supported by clear and convincing evidence.
The mother next contends the trial court's findings of fact do not support the conclusion of law that J.A.G. was neglected as to the mother. Pursuant to N.C. Gen.Stat. § 7B-101(15) (2003), a neglected juvenile is:
*54 A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
Id.
The trial court concluded by clear, cogent, and convincing evidence that the juvenile was neglected pursuant to N.C. Gen.Stat. § 7B-101(15) as it pertains to both parents, as the child lived in an environment injurious to his health and welfare and did not receive proper care and supervision. We conclude this conclusion of law is not supported by the findings of fact as they pertain to the mother.
First, we have already determined the trial court's finding of fact that the mother had failed to appropriately care for J.A.G. was not supported by clear and convincing evidence. Second, the trial court's findings of fact indicate that the mother was not at the home when J.A.G. suffered his injuries. Indeed, the mother was at the grocery store and called medical personnel upon learning of his injuries. Although the father indicated the child was injured by a fall from the sofa, the medical expert opined that J.A.G.'s injuries could not have occurred in that manner and opined his injuries were non-accidental in nature. Thus, the mother's placement of J.A.G. on the sofa during the first few months of his life when he was immobile was not the cause of his injuries and had not led to any prior injuries. Third, the facts indicate J.A.G. was developing appropriately and had never missed any doctor's appointments. Fourth, there were no allegations, evidence, or findings of fact related to any of the other bases for a finding of neglect as defined in N.C. Gen.Stat. § 7B-101(15). Finally, there was no evidence presented indicating the mother knew or reasonably should have known the father would harm J.A.G. Thus, the trial court erred in finding J.A.G. neglected as to the mother.
Next, the mother challenges the trial court's conclusion of law that J.A.G. was dependent as to her. The trial court stated in its order:
The Court further finds by clear, cogent and convincing evidence that the child is a dependent child pursuant to N.C.G.S. 7B-101(9) as it pertains to both parents, as the parents were unable to provide proper care for the care or supervision [sic] and lacked an appropriate alternative care arrangement at the time of removal.
Under N.C. Gen.Stat. § 7B-101(9), a dependent juvenile is defined as:
A juvenile in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement.
Id.
As previously discussed, the trial court's finding of fact that J.A.G.'s mother had not appropriately cared for him was not supported by clear and convincing evidence. Similarly, we concluded the finding of fact that the mother was not willing to investigate the needs of J.A.G. in a safe environment was not supported by clear and convincing evidence. We have also concluded J.A.G. was not neglected as to his mother. We therefore conclude J.A.G. was not dependent as to his mother because she was capable of providing care for and supervision of J.A.G.
It is unnecessary to address the mother's remaining arguments on appeal as we have determined the trial court erroneously concluded J.A.G. was neglected and dependent as to the mother.
Reversed and remanded.
Judges McCULLOUGH and LEVINSON concur.