IN THE MATTER OF: C.P.
No. COA05-734
North Carolina Court of Appeals
Filed February 7, 2006
This case not for publication
Cabarrus County No. 01 J 153.
Kathleen Arundell Widelski for petitioner-appellee Cabarrus County Department of Social Services; Victoria Bost for Guardian ad Litem.
Franklin Plummer for appellee maternal relatives.
John Nance for respondent-appellee mother.
Rebekah W. Davis for respondent-appellant father.
HUNTER, Judge.
Respondent-father ("respondent") appeals from orders of the trial court adjudicating his minor child, C.P., neglected, and concluding that reunification and visitation between respondent and C.P. were not in the best interests of the child. Respondent contends that certain findings and conclusions by the trial court in its adjudication order are not supported by clear and convincing evidence, and that the trial court abused its discretion in its order of disposition. We affirm the orders of the trial court.
Respondent and respondent-mother married in October of 1997. Shortly after their marriage, respondent-mother gave birth to a child, T.P. Respondent was not T.P.'s biological father. C.P., respondent's biological daughter, was born in May of 1999. When C.P. was a few weeks old, respondent and respondent-mother placed physical custody of the infant with maternal relatives. T.P. remained with respondent and respondent-mother. Although respondent and respondent-mother visited C.P. and retained legal custody of the child, the maternal relatives remained C.P.'s primary caregivers.
Respondent and respondent-mother separated in September of 2000, and eventually initiated proceedings to determine custody of T.P. and C.P. On 9 May 2001, a civil custody hearing was held. At the conclusion of the hearing, the trial court found that neither respondent nor respondent-mother were fit and proper persons to have custody of C.P. and her sister, and placed temporary custody of the children with maternal relatives. In its 14 June 2001 civil custody order, the trial court specifically found that respondent was unfit in that:
a. He has occasional fits of temper and profanity which prevent him from providing suitable care and discipline for the minor children . . . .
b. He has left his minor child [C.P.] in the permanent care and control of [maternal relatives], who have taken good care of the minor child, and [he] did so both before and after the separation of the parties, from the age of 2 weeks.
c. While in the care of [respondent] for visitation, the minor children have suffered repeated unexplained injuries and patterns of bruises, and even a limp on one occasion, which appear to be more significant and more frequent than the ordinary playtime injuries expected among children of their ages.
d. [Respondent] has been classified as Behaviorally Handicapped since high school, and receives monthly payments for this disability in the amount of $530.00 per month. Though this disability does not prevent him from doing many things, it interferes significantly with his judgment and his ability to act as a full-time parent without assistance.
The trial court also found that neither respondent nor respondent-mother "provided any formal child support or consistent financial assistance" to the maternal relatives for their care of C.P. Respondent did not appeal from the 14 June 2001 civil custody order.
Following the civil custody hearing, the trial court ordered the Cabarrus County Department of Social Services ("DSS") to begin an immediate investigation into allegations raised at the hearing that T.P. had been sexually abused. Respondent-mother thereafter entered into a consent order in which she agreed that C.P. and T.P. were abused and neglected. The consent order allowed for monthly supervised visitation with C.P. DSS subsequently substantiated sexual abuse of T.P. by respondent, and the child was adjudicated abused and neglected as to respondent.[1]
On 4 March 2004, DSS filed a juvenile petition alleging C.P. lived in an environment injurious to her welfare while in her father's care and was therefore a neglected juvenile as defined by section 7B-101(15) of the North Carolina General Statutes. Specifically, the petition alleged C.P. was neglected in that her sibling, T.P., was adjudicated an abused and neglected child as to her legal father, [respondent], on November 19, 2003.
[C.P.], at the time [T.P.] was abused and neglected by her father, also had visitation with the father at [the] same time and location as [T.P.] and was in the same environment.
[C.P.] is a neglected child in that she visited in the home, and was in the care, of [respondent] where and when another child, [T.P.], has been abused and/or neglected.
The matter came before the trial court on 10 December 2004. DSS introduced evidence of the 14 June 2001 civil custody hearing order. Notably, the trial judge for the civil custody action was the same judge who presided over the adjudication hearing. At the conclusion of the evidence, the trial court found C.P. to be neglected. A disposition hearing was held on 23 December 2004. In its subsequent order of disposition, the trial court determined that efforts to reunify C.P. and respondent would be futile and inconsistent with the child's needs. The trial court found that it was in C.P.'s best interests to be placed in the legal guardianship of the maternal relatives who had raised her. The trial court ordered respondent to have no direct contact with C.P., and placed future visitation between respondent and the child in the discretion of her legal guardians. From the orders of adjudication and disposition, respondent appeals. Respondent-mother does not appeal. By his first assignment of error, respondent contends that Findings of Fact Nos. 4 and 11 in the adjudication order are unsupported by the evidence and must be vacated. We do not agree.
Finding of Fact No. 4 provides as follows:
In the Consent Order signed by [respondent-mother], the mother of the juvenile [C.P.], the mother also stipulated to the following:
"[Paragraph] 5. On August 14, 2002, the mother stipulated that [T.P.], half sister to [C.P.], was a neglected child based upon the mother failing to provide proper care and supervision in that the child [T.P.] had been determined to have been definitely sexually abused and the mother continued to leave the child in the care of [respondent] when she believed he was the perpetrator of the abuse. The mother also failed to cooperate with the investigation regarding . . . the sexual abuse of [T.P.] [C.P.] is a neglected child in that she lived in the home where another child had been neglected."
Respondent contends that this recitation of the stipulation entered into by respondent-mother unfairly prejudices him and was used to support a finding of neglect. He argues the finding "insinuates that the father was the perpetrator in T.P.'s case" when in fact the trial court declined to find that respondent sexually abused T.P. We do not agree that the finding was improper or that it prejudiced respondent.
First, respondent does not argue that the finding is not supported or is contradicted by the evidence. In fact, the finding is an accurate recitation of respondent-mother's stipulation in her consent judgment. Further, any "insinuations" aside, Finding of Fact No. 4 does not find that respondent sexually abused T.P., only that respondent-mother believed he had. As noted supra, the same trial judge presided over the civil custody hearing and the adjudication and disposition hearings for T.P. and C.P. In its adjudication order finding T.P. abused and neglected, the trial court specifically found that, although there was circumstantial evidence to suggest that respondent may have sexually abused T.P., there was no clear and convincing evidence therefor. We do not conclude that the mere recitation of respondent-mother's stipulation containing an allegation of sexual abuse against respondent prejudiced him, where the trial court explicitly declined to find respondent had committed sexual abuse.
Respondent also objects to Finding of Fact No. 11, which states as follows:
Prior to the filing of the Chapter 50 action in 2001, neither [respondent-mother] nor [respondent] made any significant effort to care for [C.P.] nor to obtain her return from the direct care and supervision of [the maternal relatives], even though C.P. was in the legal custody of the respondent parents . . . .
Again, respondent does not demonstrate that this finding is lacking in factual basis. Rather, respondent contends that, as the trial court found that respondent and respondent-mother were unfit to provide proper care and supervision to their children, the decision to place C.P. with maternal relatives showed "good judgment" on their part and does not support a conclusion of neglect. In a related assignment of error, respondent argues that the finding of neglect by the trial court is unsupported by clear and convincing evidence. We do not agree. A neglected juvenile includes one who "does not receive proper care, supervision, or discipline from the juvenile's parent[.]" N.C. Gen. Stat. § 7B-101(15) (2005) (emphasis added). Here, the trial court found that "[f]rom the age of a few weeks until on or about June 14, 2001, [C.P.] was in the physical care of [the maternal relatives], having been placed there by her parents, who retained legal custody of the juvenile [C.P.]" Respondent does not assign error to this finding of fact. In the 14 June 2001 civil custody order from which respondent did not appeal, the trial court found that respondent never "provided any formal child support or consistent financial assistance" to the maternal relatives caring for C.P. The trial court concluded that "for the entire life of the juvenile [C.P.] from the age of a few weeks, the juvenile clearly did not receive proper care, supervision or discipline from the juvenile's parent, to wit, respondent father . . . ." There was clear and convincing evidence before the trial court that, for almost the entirety of C.P.'s life, respondent did not personally care for or supervise her, and that he also failed to provide financial assistance for her support. Having failed to provide personal care or financial support for C.P., respondent cannot now seriously contest a finding of neglect by the trial court.
The trial court also found C.P. neglected in that
during those periods of overnight parental visitation with respondent . . . from May, 2001 to July, 2001 set out in the prior Chapter 50 order concerning both [T.P.] and [C.P.], the juvenile [C.P.] was living in a home where another juvenile had been subjected to abuse or neglect by an adult who regularly lives in the home, to wit, [respondent] who was required under the Chapter 50 order to exercise his visitation at that location.
Under section 7B-101(15) of the General Statutes, "[i]n determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile . . . has been subjected to abuse or neglect by an adult who regularly lives in the home." N.C. Gen. Stat. § 7B-101(15). As noted supra, the trial court found, and this Court has affirmed, that respondent abused and neglected C.P.'s sister, T.P. We conclude the trial court did not err in adjudicating C.P. neglected, and we overrule this assignment of error.
Finally, respondent argues the trial court abused its discretion in its order of disposition by concluding that contact between respondent and C.P. was not in the best interests of the child. Respondent contends that respondent-mother was equally responsible for neglecting C.P., yet still enjoys supervised visitation with the child. Respondent argues this disparity by the trial court demonstrates abuse of discretion. We disagree.
In an abuse and neglect proceeding, "the court's primary concern must be the child's best interest." In re Pittman, 149 N.C. App. 756, 760-61, 561 S.E.2d 560, 564, disc. review denied, 356 N.C. 163, 568 S.E.2d 608 (2002), cert. denied, 538 U.S. 982, 155 L. Ed. 2d 673 (2003). In determining a child's best interests,
any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court to exclude cumulative testimony. Without hearing and considering such evidence, the trial court cannot make an informed and intelligent decision concerning the best interest of the child.
In re Shue, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984).
In the present case, the trial court found that respondent had left C.P. at a very early age in the care of maternal relatives and never took any action to have the child returned to his care; nor did he provide financial support for the care of C.P. while she lived with her caretakers. The trial court found that respondent had problems managing his anger, and that he had been convicted of the felony of intimidating a witness after respondent attempted, in the presence of C.P., to break into a vehicle driven by C.P.'s caretaker, and threatened to kill the caretaker. Following that incident, C.P. experienced nightmares. Respondent was also convicted of two counts of communicating threats. In addition, the trial court noted that C.P. and her sister, while in respondent's care, "suffered repeated and unexplained injuries and patterns of bruises, and even a limp on one occasion, which appeared to be more significant and more frequent than the ordinary playtime injuries expected among children of their ages." Further, the trial court found that respondent "had fits of temper and profanity that prevented him from providing suitable care and discipline to his children." Finally, the trial court during the civil custody hearing determined that respondent was unfit to have custody of his children. Although we agree that respondent-mother was also responsible for the events necessitating DSS's involvement with C.P., in light of the evidence and the trial court's findings, we find no abuse of discretion by the trial court in concluding that contact between respondent and C.P. would not be in the child's best interests. We overrule respondent's final assignment of error.
The orders of adjudication and disposition are affirmed.
Affirmed.
Judges McCULLOUGH and GEER concur.
Report per Rule 30(e).
NOTES
[1] This Court recently affirmed the trial court's orders of adjudication and disposition concerning T.P. in a related appeal, In re T.P., ___ N.C. App. ___, ___ S.E.2d ___ (No. COA05-182 filed 3 January 2006).