STATE OF NORTH CAROLINA v. THOMAS MARLAND VEAZEY

No. COA09-566

(Filed 8 December 2009)

**1. Evidence— motor vehicle checkpoint—motion to suppress—resolution of conflicting evidence**

The trial court's findings of fact in its order denying defendant's motion to suppress evidence obtained at a motor vehicle checkpoint were supported by competent evidence because it is for the trial court to resolve conflicts in the evidence and such resolution will not be disturbed on appeal.

**2. Constitutional Law— Motor vehicle checkpoint**

In evaluating the constitutionality of a motor vehicle checkpoint, a court considers the primary programmatic purpose of a checkpoint and, if the purpose is valid, the reasonableness of the checkpoint, as determined by weighing the factors set forth in *Brown v. Texas*, 433 U.S. 47.

**3. Constitutional Law— Motor vehicle checkpoint—primary programmatic purpose**

The trial court's conclusions that the primary programmatic purpose of the checkpoint was the enforcement of the State's motor vehicle law, that this purpose was lawful, and that the checkpoint was tailored to fit this purpose were supported by the findings.

**4. Constitutional Law— Motor vehicle checkpoint—reasonableness**

The trial court's findings of fact and conclusions of law indicate that the trial court considered the factors set forth in *Brown* in concluding that the checkpoint was not unreasonable and therefore valid under the Fourth Amendment to the Constitution.

Appeal by defendant from order entered 13 March 2009 by Judge L. Todd Burke in Stokes County Superior Court. Heard in the Court of Appeals 27 October 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Tamara Zmuda, for the State.*

*The Dummit Law Firm, by E. Clarke Dummit, for defendant.*

BRYANT, Judge.

On 1 January 2006, defendant Thomas Marland Veazey was charged with driving without a valid license and driving while impaired ("DWI") after being stopped at a driver's license checkpoint. Defendant was found guilty of DWI in district court and appealed to superior court. Prior to trial, defendant moved to suppress all evidence obtained at the checkpoint, alleging that his detention at the checkpoint was unconstitutional. Following a hearing, the trial court denied the motion and defendant subsequently pled no contest to DWI at the 5 June 2007 criminal session of Stokes County Superior Court, reserving his right to appeal the denial of his motion. Defendant appealed to this Court. We remanded, instructing the trial court to make additional findings of fact and conclusions of law regarding the constitutionality of the checkpoint. *See State v. Veazey*, 191 N.C. App. 181, 662 S.E.2d 683 (2008). We also held that, in the event the trial court found the initial checkpoint was constitutional, the "facts provided a sufficient basis for reasonable suspicion permitting . . . further investigation and detention of [d]efendant." *Id.* at 195, 662 S.E.2d at 692. On 13 March 2009, the trial court entered an

order, with findings of fact and conclusions of law, denying defendant's motion to suppress. Defendant again appeals. As discussed below, we affirm.

### Facts

On 1 January 2006, North Carolina State Trooper F.K. Carroll and another law enforcement officer set up a traffic checkpoint just outside the city limits of Walnut Cove in Stokes County. Trooper Carroll's purpose was to "to enforce any kind of motor vehicle law violations" he might encounter. Shortly thereafter, defendant approached the checkpoint and was stopped. Defendant produced a valid State of Washington driver's license, although his car had North Carolina license plates. Trooper Carroll also detected a strong order of alcohol coming from the vehicle and noticed that defendant's eyes were red and glassy. Trooper Carroll directed defendant to pull onto the shoulder and, in doing so, defendant ran over an informational sign. When asked whether he had been drinking, defendant responded that he had consumed several beers. After defendant registered two positive readings on Alcosensor tests, Trooper Carroll arrested him.

On appeal, defendant brings forward four assignments of error, contending the trial court erred in (I) making findings of fact not supported by competent evidence, (II) admitting evidence gained during a constitutionally unreasonable checkpoint, (III) admitting evidence gained at an unconstitutional checkpoint, and (IV) admitting evidence gained from a checkpoint that lacked a specific programmatic purpose. Finding no error in the trial court's order, we affirm.

### Standard of Review

"This Court's review of a trial court's denial of a motion to suppress in a criminal proceeding is strictly limited to a determination of whether the court's findings are supported by competent evidence, even if the evidence is conflicting, and in turn, whether those findings support the court's conclusions of law." *In re Pittman*, 149 N.C. App. 756, 762, 561 S.E.2d 560, 565 (citation omitted), *disc. review denied*, 356 N.C. 163, 568 S.E.2d 608 (2002), *cert. denied*, 538 U.S. 982, 155 L. Ed. 2d 673 (2003). "[I]f so, the trial court's conclusions of law are binding on appeal." *State v. West*, 119 N.C. App. 562, 565, 459 S.E.2d 55, 57, *disc. review denied*, 341 N.C. 656, 462 S.E.2d 524 (1995). "If there is a conflict between the state's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal." *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982).

*I*

**[1]** Defendant first challenges findings of fact 12, 14, 15 and 17, asserting that they are not supported by competent evidence. We disagree.

The challenged findings state:

12. In selecting this portion of Highway 311 for a license checkpoint, Trooper Carroll was aware of numerous violations of North Carolina Motor Vehicle law from traffic in that area including No Operator's License, Driving While License Revoked, Inspection Violations, Expired Tags, and No Liability Insurance.

\*\*\*

14. Trooper Carroll had been successful in the past with license checkpoints at this location, finding many violations.

15. Trooper Carroll's focus in organizing this license checkpoint was motor vehicle violations and [he] testified repeatedly that the purpose of this license checkpoint was for the enforcement of motor vehicle law.

\*\*\*

17. Resolving all conflicts in the testimony, the primary programmatic purpose of the checkpoint was to determine if drivers were duly licensed and observing the motor vehicle laws of North Carolina.

We begin by noting that defendant fails to cite any authority, either statutes or case law, in this portion of his brief, and we could dismiss this argument on that ground. *See* N.C. R. App. P. 28(b)(6) (2007); *Sugar Creek Charter Sch., Inc. v. Charlotte-Mecklenburg Bd. of Ed.,* —— N.C. App. ——, —— 673 S.E.2d 667, 676 (2009). However, even if we reach the merits of his argument, defendant cannot prevail. In his brief, defendant acknowledges that Trooper Carroll testified to the facts summarized in findings of fact 12, 14 and 15. He then argues that they "are not supported by competent evidence as Trooper Carroll made statements that *conflict* with the findings in that his statements encompass more than is represented by the findings of fact." (Emphasis added). Likewise, he contends that finding of fact 17 is erroneous because "[t]he primary purpose of the checkpoint was not merely to determine if drivers were duly licensed and observing motor registration laws. It was also set up to check for DWIs." Thus, defendant does not argue that these findings are not supported by

competent evidence, but rather disagrees with the trial court's resolution of conflicts in the evidence. Where evidence is conflicting, it is for the trial court "to resolve the conflict and such resolution will not be disturbed on appeal." *Chamberlain*, 307 N.C. at 143, 297 S.E.2d at 548. Findings 12, 14, 15 and 17 are supported by competent evidence. This assignment of error is overruled and the trial court's findings of fact are binding.

## II, III and IV

[2] Defendant's three remaining assignments of error and the corresponding arguments in his brief challenge the constitutionality of the checkpoint on various grounds. In evaluating the constitutionality of a checkpoint, a reviewing court must first determine the primary programmatic purpose of the checkpoint under *City of Indianapolis v. Edmond*, 531 U.S. 32, 148 L. Ed. 2d 333 (2000), and if the purpose is valid, must consider whether the checkpoint was reasonable under the balancing test articulated in *Brown v. Texas*, 443 U.S. 47, 61 L. Ed. 2d 357 (1979). *Veazey*, 191 N.C. App. at 185-86, 662 S.E.2d at 686-87.

In his brief, defendant essentially reargues his case for suppression of the evidence, an argument more properly addressed to the trial court. Neither his assignments of error nor the arguments in his brief specifically refer to or challenge any of the trial court's conclusions of law; he also fails to argue that the conclusions are not supported by the findings of fact. Parts of defendant's argument challenge a finding from the original order denying his motion to suppress, even though that order is not appealed from here. These arguments are clearly inapposite.

Defendant argues that the checkpoint did not meet the balancing test required under *Brown*. However, defendant acknowledges that the superior court here applied the *Brown* balancing test, but once again contends that it erred in "tak[ing] Trooper Carroll on his word with respect to some statements and not considering his other statements." There is no error in the trial court's so doing. Weighing the credibility of witnesses and resolving conflicts in their testimony is precisely the role of the superior court in ruling on a motion to suppress. *Chamberlain*, 307 N.C. at 143, 297 S.E.2d at 548. Defendant would have this Court reapply the *Brown* balancing test, but this is not our task. Having determined above that competent evidence supports the trial court's findings of fact, our further review is limited to determining whether those findings support the trial court's conclusions of law. *In re Pittman*, 149 N.C. App. at 762, 561 S.E.2d at 565.

Defendant does not argue that any *Brown*-related conclusions are not supported by the trial court's findings of fact.

Defendant also attacks the checkpoint here as permitting Trooper Carroll excessive discretion. He asks that we overrule "a string of poor decisions involving checkpoints for drivers' licenses" from this Court as well the North Carolina Supreme Court, relief we could not grant even were we so inclined. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Even in making this misplaced argument, defendant concedes that the United States Supreme Court case on which he bases his argument has approved stopping every vehicle as one acceptable way of limiting officer discretion. *See Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 674 (1979). Here, Trooper Carroll stopped every vehicle that approached the checkpoint.

Defendant having failed to argue that any particular conclusion of law is not supported by the findings, we could dismiss this portion of his appeal. However, even if we attempted to construct a proper appeal for defendant, each of the trial court's conclusions of law is fully supported by the findings of fact.

The trial court's order denying defendant's motion to suppress contains the following conclusions of law:

1. That Trooper Carroll complied with the statutory requirements for conducting a license checkpoint.

2. That the primary programmatic purpose of the checkpoint was the enforcement of the State's Motor Vehicle laws.

3. That the primary programmatic purpose of the license checkpoint was achieved systematically by stopping every vehicle and asking every driver for license and registration.

4. That the State has a "vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed." 440 U.S. at 658. City of Indianapolis v. Edmond, 531 U.S. 32, 39 (2000) (quoting Delaware v. Prouse, 440 U.S. 648 (1979)).

5. That checkpoint stops are minimally intrusive, and are not subjective stops, like those arising from roving patrols, [and] checkpoints are viewed with less scrutiny than are roving patrols. State v. Mitchell, 358 N.C. 63, 66 (2004).

6. That the primary programmatic purpose of this license check-point was lawful.

7. That the license checkpoint was tailored to fit the primary pro-grammatic purpose by having obtaining [sic] prior approval from a supervisor and by having selected a stretch of roadway where violations [of] motor vehicle law had been observed by the arrest-ing officer and where arrests for Driving While Impaired had been made in the past.

8. That the license checkpoint did not place unreasonable inter-ference with individual liberty or privacy by: notifying oncom-ing motorists of an approaching checkpoint; obtaining prior approval from a supervising officer; stopping every vehicle com-ing through the license checkpoint; making visible the signs of the officers' authority.

9. That the stop and detention of the Defendant at the license checkpoint was not unreasonable and therefore valid under the Fourth Amendment of the United States Constitution.

10. That based on the totality of the circumstances Trooper Carroll lawfully obtained sufficient evidence to form a reasonable suspicion that the Defendant was committing the criminal offense of Driving While Impaired.

11. The parties have stipulated that this Order can be signed out of Term and out of Session.

Although not mentioned in his assignments of error, defendant argues in his brief that the checkpoint violated requirements of N.C. Gen. Stat. § 20-16.3A(a)(1) (2005) (since amended) because it lacked a "systematic plan" for stopping vehicles. However, finding of fact 3 states that the "checkpoint was organized pursuant to a pre-determined plan[,]" and finding 10 states that "[t]he license check was conducted systematically, every vehicle was stopped, and every driver was asked to produce driver's license and proof of registra-tion." These findings fully support conclusion 1, "[t]hat Trooper Carroll complied with the statutory requirements for conducting a license checkpoint."

[3] Conclusions of law 2, 6 and 7 concern the checkpoint's program-matic purpose, which is the focus of defendant's fourth argument and assignment of error. Defendant once again argues that Trooper Carroll gave conflicting testimony about his purpose in setting up

**STATE v. VEAZEY**

[201 N.C. App. 398 (2009)]

the checkpoint and urges this Court to overrule the trial court's resolution of same. This is not our role. *See Chamberlain,* 307 N.C. at 143, 297 S.E.2d at 548. Defendant fails to argue that these conclusions of law are unsupported by the trial court's findings of fact. Defendant acknowledges that a checkpoint with a primary programmatic purpose of enforcing motor vehicle laws is permissible. In addition, findings 12, 14, 15 and 17, quoted *supra,* fully support the trial court's conclusions that "the primary programmatic purpose of the checkpoint was the enforcement of the State's Motor Vehicle laws" and that this purpose was lawful and the checkpoint was tailored to fit this purpose.

Nothing in defendant's brief refers to or challenges conclusions of law 3, 4, 5, 10 or 11. We note that denominated conclusion 4 is simply a quotation from one of the primary cases upon which defendant relies and conclusion 5 is a statement of our State's case law on checkpoint stops. Conclusion 10 holds that Trooper Carroll lawfully obtained sufficient evidence to create reasonable suspicion that defendant was driving while impaired. Conclusion 11 is a stipulation by the parties.

**[4]** Conclusions 8 and 9 concern the reasonableness of the checkpoint, a determination made under *Brown* by weighing "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown,* 443 U.S. at 51, 61 L. Ed. 2d at 362. The court's findings and other conclusions indicate that the trial court considered these factors, concluding that the State has a strong interest in enforcing motor vehicle laws (findings 2, 12, 14, 15, 16 and 17, and conclusion 4), that the checkpoint was tailored to meet this purpose (findings 4, 7, 10-12, and 14-17, and conclusion 7) and that the checkpoint constituted a minimal intrusion on drivers' liberty (conclusion 5). Thus, conclusions 8 and 9 are fully supported. These assignments of error are overruled.

AFFIRMED.

Judges WYNN and McGEE concur.