714 S.E.2d 189 (2011)
In the Matter of A.N.L.
No. COA11-18.
Court of Appeals of North Carolina.
July 5, 2011.
*190 Hanna Frost Honeycutt, Marion, for petitioner-appellee McDowell County Department of Social Services.
Pamela Newell, Raleigh, for Guardian ad Litem.
Janet K. Ledbetter, Hillsborough, for respondent-appellant mother.
*191 CALABRIA, Judge.
Respondent-mother[1] appeals from the trial court's order adjudicating her minor child ("Autumn[2]") an abused and neglected juvenile and continuing legal custody of Autumn with the McDowell County Department of Social Services ("DSS"). We affirm.

I. Background
On 8 August 2010, respondent-mother and her boyfriend were involved in a domestic altercation. Respondent-mother initially struck her boyfriend while she was holding Autumn, a one-month-old infant, in her arms. The boyfriend responded by hitting respondent-mother numerous times in the face and head, causing respondent-mother to fall down while still holding Autumn. Autumn was not injured in the fall.
Neighbors who overheard the incident called 911. When law enforcement officers arrived, respondent-mother did not tell them that her boyfriend had struck her. Respondent-mother continued to live with her boyfriend after the incident.
On 10 August 2010, DSS filed a petition alleging that Autumn was an abused, neglected, and dependent juvenile based upon the 8 August 2010 incident. On 11 August 2010, respondent-mother signed a memorandum of consent placing Autumn in the custody of DSS. DSS placed Autumn with respondent-mother's adoptive parents.
On 19 August 2010, the trial court entered an order appointing Guardian ad Litem Program staff member Charity Robinson ("Robinson") as guardian ad litem ("GAL") for Autumn. In the same appointment order, the trial court appointed Lee Taylor ("Taylor") as the GAL's attorney advocate.
An adjudication hearing was conducted on 23 September 2010 in McDowell County District Court. After hearing evidence, the trial court adjudicated Autumn as abused and neglected, but not dependent. The trial court then proceeded directly to a disposition hearing. The transcript of the adjudication and disposition hearing indicates that Taylor was present as the GAL attorney advocate and cross-examined witnesses during both portions of the proceedings. Taylor also concurred with DSS's adjudication and disposition recommendations for Autumn.
On 4 October 2010, the trial court entered a formal adjudication and disposition order, adjudicating Autumn an abused and neglected juvenile. In the disposition portion of its order, the trial court ordered Autumn to remain in DSS custody and ordered DSS to continue with reasonable efforts toward achieving the permanent plan of reunification. Respondent-mother appeals.

II. Autumn's GAL
Respondent-mother argues that the trial court violated N.C. Gen.Stat. § 7B-601(a) by either (1) failing to appoint a valid GAL for Autumn; or (2) conducting the adjudication and disposition hearing without Autumn being adequately represented by her appointed GAL. We disagree.

A. Appointment of GAL
N.C. Gen.Stat. § 7B-601(a) governs the appointment and duties of a GAL for a juvenile in an abuse, neglect, and dependency hearing.[3] It states, in relevant part: "[w]hen in a petition a juvenile is alleged to be abused or neglected, the court shall appoint a guardian ad litem to represent the juvenile ...." N.C. Gen.Stat. § 7B-601(a) (2009). Since the DSS petition alleged that Autumn was abused and neglected, the trial court was required to appoint a GAL to represent Autumn in the abuse and neglect proceedings.
Respondent-mother first argues that the trial court's order appointing Robinson as Autumn's GAL was not valid because Robinson was a GAL Program staff member and could not also serve as an individual GAL. Respondent-mother contends, in her brief, that "the mandatory appointment of a Guardian ad Litem pursuant to N.C. Gen.Stat. § 7B-601(a) is not satisfied by staff members and administrators of a GAL program acting *192 as substitute or `de facto' guardians." However, nothing in N.C. Gen.Stat. § 7B-601(a) precludes a trial court from appointing an employee of the GAL Program to serve individually as a juvenile's GAL. The substantial number of these cases pending in our district courts makes it increasingly likely that volunteer GALs will not always be available for appointment in all cases. In such circumstances, it may be necessary for the trial court to appoint a staff member of the GAL Program to serve as an individual GAL. When a GAL Program staff member is formally appointed by the trial court to serve as an individual GAL and fulfills the duties of a GAL as required by N.C. Gen.Stat. § 7B-601(a), that staff member is acting as an actual GAL under the statute and cannot be considered a substitute or "de facto" guardian, as respondent-mother argues. Contrary to respondent-mother's contention, the use of a properly appointed GAL Program staff member to serve as a juvenile's GAL fully satisfies the requirements of N.C. Gen.Stat. § 7B-601. This argument is overruled.

B. Duties of GAL
Respondent-mother also contends that the trial court erred by conducting the adjudication and disposition hearing without Autumn's GAL being present.
Pursuant to N.C. Gen.Stat. § 7B-601(a), [t]he duties of the guardian ad litem program shall be to make an investigation to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs; to facilitate, when appropriate, the settlement of disputed issues; to offer evidence and examine witnesses at adjudication; to explore options with the court at the dispositional hearing; to conduct follow-up investigations to insure that the orders of the court are being properly executed; to report to the court when the needs of the juvenile are not being met; and to protect and promote the best interests of the juvenile until formally relieved of the responsibility by the court.
Id.
Although the statute does not specify which duties of the GAL program are to be performed by the individual GAL and which are the responsibility of the attorney advocate, the statute makes clear that the attorney advocate is to assist the nonlawyer GAL and thereby protect the legal rights of the minor in court proceedings. While the GAL could potentially facilitate settlement of disputed issues arising at a[n] [abuse and neglect] hearing, the investigation and observation of the needs of the children and identification of the resources available to meet those needs take place both before and after a dispositional hearing, meaning that those actions necessarily occur outside the courtroom. This recognition of separate in-court and out-of-court responsibilities for the nonlawyer GAL and the attorney advocate in no way diminishes the GAL volunteer's obligation to protect the best interests of the minor at all critical stages. Although the GAL's presence at the [abuse and neglect] hearing may be preferable, the language of the statute does not mandate the nonlawyer volunteer's attendance.
In re J.H.K. and J.D.K., 365 N.C. 171, ___, 711 S.E.2d 118, 121 (2011). Ultimately, the GAL and the attorney advocate "work as a team" to represent the juvenile. Id.
In the instant case, the record indicates that Autumn was adequately represented by the GAL Program pursuant to N.C. Gen. Stat. § 7B-601(a). Taylor was present as the attorney advocate during both portions of the proceedings, and actively participated by questioning witnesses and offering recommendations for adjudication and disposition. The content of Taylor's questions sufficiently demonstrated that the GAL Program had actively investigated the case prior to the hearing. Moreover, while the GAL Program did not submit a report into evidence, Taylor affirmatively stated to the trial court that a GAL report was not available only due to the newness of the case and assured the court that the GAL Program was actively "on it." In light of this record, we hold that the GAL Program satisfied its duties under N.C. Gen. Stat. § 7B-601(a) in the instant case. Respondent-mother's argument is overruled.

*193 III. Abuse and Neglect

Respondent-mother argues that the trial court erred by adjudicating Autumn as an abused and neglected juvenile. We disagree.
A proper review of a trial court's finding of [abuse and] neglect entails a determination of (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact. In a non-jury [abuse and] neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings. Our review of a trial court's conclusions of law is limited to whether they are supported by the findings of fact.
In re Pittman, 149 N.C.App. 756, 763-64, 561 S.E.2d 560, 566 (2002) (internal quotations and citations omitted).

A. Findings of Fact
Respondent-mother first challenges the following findings of fact:
8. That on August 8, 2010, Respondent Mother hit ... her live-in boyfriend, while the juvenile, who was a month old at the time, was in her arms. [Her boyfriend] hit Respondent Mother about her face and head while she was holding the juvenile. During the altercation, Respondent Mother dropped to the floor with the juvenile to protect herself and the juvenile, but [her boyfriend] continued to strike her.
9. That law enforcement responded on scene after an unknown person called 911. Respondent Mother denied that there had been a domestic altercation to law enforcement.
10. That Respondent Mother suffered injuries from the domestic altercation to include bruises and knots.
11. That after DSS discovered the bruises on Respondent Mother's body, and learned the details of the domestic altercation between Respondent Mother and [her boyfriend], DSS created a safety plan to which Respondent Mother agreed. According to the safety plan, Respondent Mother and the juvenile would go live with Respondent Mother's parents in Charlotte, North Carolina.
12. That Respondent Mother initially left with the juvenile to stay with her family in Charlotte but demanded to return while on the way to Charlotte.
13. That Respondent Mother now lives in McDowell County while the juvenile resides with her parents in Charlotte. Respondent Mother is still welcome to stay with her parents in Charlotte; however, she reports she does not want to stay there because she does not get along with her mother.
14. That Respondent Mother does not have a job in McDowell County and testified that she has no ties to McDowell County currently.
15. That Respondent Mother denies being in contact with [her boyfriend] although she admits that his grandmother still drives her places.
However, respondent-mother's testimony during the adjudication hearing fully supported the trial court's challenged findings of fact, and therefore these findings are conclusive on appeal. Pittman, 149 N.C.App. at 764, 561 S.E.2d at 566.

B. Adjudication
Respondent-mother next contends that the trial court's findings do not support its determination that Autumn was an abused and neglected juvenile.
An abused juvenile is statutorily defined, in pertinent part, as:
Any juvenile less than 18 years of age whose parent, guardian, custodian, or caretaker:
a. Inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means; [or]
b. Creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means[.]
In re C.M. & M.H.M., 198 N.C.App. 53, 60, 678 S.E.2d 794, 798 (2009) (quoting N.C. Gen.Stat. § 7B-101(1)(a) & (b) (2007)).
*194 The Juvenile Code defines a neglected juvenile as
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of [the] law.
N.C. Gen.Stat. § 7B-101(15) (2009). "[T]he trial court [has] some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside" when adjudicating whether a juvenile is neglected. In re McLean, 135 N.C.App. 387, 395, 521 S.E.2d 121, 126 (1999). "In determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent." In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984).
In the instant case, respondent-mother, while holding one-month-old Autumn in her arms, initiated a physical altercation with her boyfriend that led to respondent-mother falling to the floor while being punched repeatedly. Although Autumn was not injured as a result of the altercation, respondent-mother suffered multiple knots and bruises. Ultimately, respondent-mother's decision to enter into a physical altercation while holding one-month-old Autumn created a substantial risk of serious physical injury to her, particularly when considering her extremely young age and overall helplessness. Thus, the trial court did not err in adjudicating Autumn as abused.
The trial court's findings also support its determination that Autumn was a neglected juvenile. In addition to the findings regarding the physical altercation, the trial court found that respondent-mother failed to report the incident to law enforcement when they were called to the scene to investigate. The trial court also found that respondent-mother was being treated for bipolar disorder, and that respondent-mother did not believe her treatment was working. Under these circumstances, the trial court did not err in adjudicating Autumn as neglected. This argument is overruled.

IV. Conclusion
Autumn was fully represented by a GAL as contemplated by N.C. Gen.Stat. § 7B-601(a) during the abuse and neglect proceedings. Respondent-mother's testimony supported the trial court's findings of fact, and these findings supported the trial court's adjudication of Autumn as abused and neglected. The trial court's order is affirmed.
Affirmed.
Judges HUNTER, ROBERT C. and ELMORE concur.
NOTES
[1] Respondent-father did not appeal the trial court's order and is not a party to this appeal.
[2] "Autumn" is a pseudonym used to protect the identity of the minor child.
[3] This statute also governs the duties of a juvenile's GAL in a termination of parental rights proceeding. See N.C. Gen.Stat. § 7B-1108(b) (2009).