An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-772

Filed 15 April 2026

Guilford County, Nos. 21JA000429-400, 21JA000430-400

IN THE MATTER OF: X.J.H., X.L.H.

Appeal by respondent-mother from a termination of parental rights order entered 28 May 2025 by Judge Brian K. Tomlin in Guilford County District Court. Heard in the Court of Appeals 12 March 2026.

> *Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services*
>
> *Poyner Spruill LLP, by Rohun S. Shah, for appellee Guardian ad Litem.*
>
> *Peter Wood for respondent-appellant mother.*

FREEMAN, Judge.

Respondent-mother appeals from the trial court's order terminating her parental rights. On appeal respondent-mother argues "[t]he trial court abused its discretion in terminating parental rights where the guardian ad litem failed to perform her duties"; therefore, the trial court's findings of fact are unsupported by competent evidence and in turn do not support the conclusions of law that the

termination was in the children's best interest. After careful review, we vacate and remand for a new disposition hearing.

## I. Factual and Procedural Background

Respondent-mother is the biological parent of Xena and Xandra.[1] The children's biological father passed away on 3 March 2017, when the children were five and four years old, respectively. On 27 March 2018, the children's paternal aunt, Toni Hinton, was awarded legal custody of the children. The children lived with their aunt, her boyfriend, Angel Issac, and her two biological children.

On 19 February 2021, Guilford County Department of Health and Human Services ("DHHS") received a report containing allegations that nine-year-old Xena, and eight-year-old Xandra left their aunt's home in search of food because they had not eaten in days. At six in the morning, the Greensboro Police Department and emergency services responded to a 911 call that the children were standing on the side of the road. Emergency services and law enforcement responded and found Xena and Xandra at a gas station and observed the girls had wounds in various stages of healing, including multiple scars, bruises, burns, and the branding of letters. The children reported they had been "tortured" by their "cousin Toni." Xena and Xandra described they were forced to stand or squat in a corner for long periods of time or

---

[1] Pseudonyms are used to protect the identities of the minor children. *See* N.C. R. App. P. 42(b).

hold a laundry detergent container over their heads "for hours for not doing their chores correctly." After not being fed for five days, Xena and Xandra "ran away" and went to the gas station "to buy Takis and Sprite because they were starving." Emergency services subsequently took the children to the hospital.

A DHHS social worker spoke with the girls at the hospital. Xena and Xandra told the social worker that both Hinton and Issac hit them. Xandra shared that Hinton made "them feel bad about themselves by telling them that their mother doesn't want them anymore and ma[de] fun of the fact that their father died." DHHS obtained non-secure custody of the children the same day, and placed the children together in a foster home. On 22 February 2021, DHHS filed petitions alleging Xena and Xandra were abused, neglected, and dependent juveniles.

On 20 March 2021, Xandra was placed in a therapeutic foster home based on mental health and behavioral concerns that resulted in multiple hospitalizations. DHHS social workers and the girls' placement providers coordinated to allow the sisters to have virtual visits.

A "Dispositional Hearing Court Report"—which states it was written and received by the GAL office 15 April 2021—is the only GAL report that appears in the record on appeal. This report lists Peggy Adelman as the children's GAL, Angelique Hamlet as the GAL supervisor, and Donna Michelle Wright as the GAL Attorney Advocate. That report describes GAL Adelman was appointed 12 March 2021 and an

initial hearing took place 3 March 2021.[2] Further, the report states the date of the next hearing was 30 April 2021. The report describes the children's psychological, social, and emotional status; physical health and dental status; educational/developmental status; family time/contacts with family; the wishes of the children; other concerns; and the GAL recommendations for the best interest of the children based on investigation conducted from 16 March 2021 to 15 April 2021.

On 30 April 2021, the trial court adjudicated the children abused, neglected, and dependent. That same day, the trial court held an initial disposition hearing. In its written order signed 17 June 2021, the trial court found respondent-mother had "not had contact with the juveniles in several years[,]" and, although she was not incarcerated at that time, the children "believed [respondent-mother] remained incarcerated." Respondent-mother was incarcerated from 27 March 2019 to 25 June 2019 after being convicted of felony indecent liberties with a child. However, at the time of the adjudication and disposition hearings, respondent-mother was serving a three-year probation term. Respondent-mother had not entered into a case plan, but DHHS "was prepared to offer" a case plan that addressed parenting skills, mental health, housing, substance use, and employment or income management. Further, the trial court noted visitation between respondent-mother and the children was "suspended pending further orders of the Court."

---

[2] This Court cannot discern any order or any other document in the record on appeal that indicates a hearing on 3 March 2021.

The trial court then ordered visitation between respondent-mother and the children remain suspended; dismissed the children's aunt and her boyfriend as parties to the proceedings; and ordered that the children remain in DHHS legal and physical custody. That order listed Peggy Adelman was present on WebEx as the Guardian ad Litem ("GAL") volunteer, Donna Michelle Wright was present as the attorney advocate, and Angelique Hamlet was present on WebEx as the GAL supervisor.[3]

The trial court ultimately held its first permanency planning hearing on 9 November 2021. In its 14 January 2022 order following that hearing, the trial court found that respondent-mother had entered into a case plan with DHHS on 11 October 2021 and made adequate progress in her case plan. This case plan addressed housing, environment, and basic physical needs; parenting skills; employment and income management; substance abuse; and emotional and mental health. At the time of the hearing, respondent-mother had several pending criminal charges scheduled for hearing on 4 January 2022. The trial court concluded respondent-mother was "cooperating with" and "remain[ed] available to the Court, [DHHS], and the Guardian *ad litem* for the juveniles."

The trial court made reunification the primary plan with adoption as the

---

[3] No order appointing a GAL appears in the record before this Court. However, the "Dispositional Hearing Court Report" in the record states Peggy Adelman was the children's GAL and that she was appointed was 12 March 2021.

secondary plan, and awarded respondent-mother weekly sixty-minute, supervised visitation with the children in a "therapeutic setting[.]" That order listed Wright was present as the attorney advocate and Hamlet was present on WebEx as the GAL supervisor.

On 2 February 2022, the trial court held another permanency planning hearing. In its 26 April 2022 order following that hearing, the trial court found respondent-mother continued to have pending criminal charges with new hearing dates, and on 26 January 2022, a probation violation was filed as a result of positive drug screens. The trial court concluded respondent-mother was "not making adequate progress within a reasonable time period under the terms of her case plan[,]" but was actively participating in her case plan and "cooperating with" and "remain[ed] available to the Court, [DHHS], and the Guardian *ad litem* for the juveniles." The primary and secondary plans, as well as visitation remained the same. That order listed Wright was present as the attorney advocate and Hamlet was present on WebEx as the GAL supervisor.

On 10 October 2023, the trial court held another permanency planning hearing. In its 1 December 2023 order, the trial court found respondent-mother had been detained on 5 September 2023 for new pending criminal charges with a release date of 16 December 2024. As a result of these new charges, respondent-mother's suspended sentence—for her conviction of felony indecent liberties with a minor— was revoked and reactivated. Further, DHHS "encouraged" respondent-mother to

"contact the therapist to arrange visitation" but DHHS was "unable to assess any areas of improvement for [the social worker] to address during visitation due to [respondent-mothers] lack of participation." The trial court concluded that respondent-mother was no longer making adequate progress with her case plan; cooperating with DHHS, the trial court, and the GAL; and no longer remained available to the trial court, DHHS, and the GAL.

The trial court then made adoption the primary plan with reunification as the secondary plan, and suspended visitation. That order listed Wright was present as the attorney advocate and Hamlet was present on WebEx as the GAL supervisor.[4]

On 5 June 2024, DHHS moved for termination of respondent-mother's parental rights, and on 23 July 2024, the trial court held a pre-trial termination of parental rights hearing. In its 31 July 2024 order following that hearing, the trial court stated "[t]he Guardian ad Litem office was appointed[,]" and listed Wright was present as the attorney advocate and Hamlet was present on WebEx as the GAL supervisor. Further, the trial court scheduled the termination for parental rights hearing to take place on 17 September 2024.

On the day of that hearing, the trial court entered a continuance order rescheduling the termination of parental rights hearing for 12 November 2024 because respondent-mother's attorney was sick and unable "to adequately prepare

---

[4] DHHS' "Court Summary" for the 10 October hearing lists in the box labeled "Juvenile's GAL/GAL Supervisor" the names "Samantha Horton/Angelique Hamlet."

for or have a hearing[.]" Subsequently, the trial court entered three other separate continuance orders rescheduling the termination for parental rights hearing on 12 November 2024, 7 January 2025, and 18 March 2025.[5]

On 15 April 2025, the trial court held the termination of parental rights hearing and entered its written order. At the hearing, DHHS's attorney introduced Wright as "Guardian ad Litem Attorney Advocate" and "Dr. LaShawn Hewitt as the GAL Supervisor[.]" DHHS's attorney asked the trial court to take judicial notice of the case record, "including court summaries and GAL court reports[.]"[6] At the adjudication portion of the hearing, Wright cross-examined DHHS witness, social worker supervisor Kalah Dumas, respondent-mother, and respondent-mother's god-sister, LaToya Slade, regarding respondent-mother's compliance with the housing, mental health, and financial components of her case plan throughout the life of the case and at the time of the hearing, as well as visitation with the children.

At the best interest stage of the hearing, Wright examined Dumas again to ask about the children's current placement and their outside of school activities.

---

[5] On 12 November 2024, the trial court entered another continuance order rescheduling the termination of parental rights hearing for 7 January 2025 because the trial court was unable to reach the matter. On 7 January 2025, the trial court entered another continuance order rescheduling the termination of parental rights hearing for 18 March 2025 because respondent-mother's attorney was "not available due to illness[.]" And, again on 18 March 2025, the trial court entered a continuance order rescheduling the termination of parental rights hearing for 15 April 2025 because "the underlying JA Judge" was "on the bench this day and [she] heard the [permanency planning hearing] with the change of plan[.]"

[6] The record on appeal only reveals one GAL report dated 15 April 2021, however, three DHHS reports, and one DHHS report summary were provided 30 April 2021, 9 November 2021, 2 February 2022, and 10 October 2023.

Subsequently, DHHS's attorney argued it would be in the children's best interest to terminate parental rights as it relates to the statutory factors, *see generally* N.C.G.S. § 7B-1111 (2025), and Wright "concur[ed] with the Department" and "asked that [the trial court] grant relief . . . that it [was] in the best interest of [her] client that [respondent-mother's] parental rights be terminated[.]"

By written order, the trial court terminated respondent-mother's parental rights under N.C.G.S. §§ 7B-1111(a)(1), (2), (3), (6), and (7), and found it was in the children's best interest to terminate her parental rights. In that order, the trial court listed Wright was present as the attorney advocate and Hewitt was present on WebEx as the GAL supervisor. Respondent-mother filed written notice of appeal on 4 June 2025.

## II.    Jurisdiction

This Court has jurisdiction to review "[a]ny order that terminates parental rights or denies a petition or motion to terminate parental rights." N.C.G.S. § 7B-1001(a)(7) (2025).

## III.    Standard of Review

"A termination of parental rights proceeding involves two different stages that trigger two distinct standards of review on appeal." *In re X.I.F.*, 297 N.C. App. 799, 805 (2025). At the first stage, or the adjudicatory phase, the petitioner bears the burden of proving by clear and convincing evidence that grounds under section 7B-1111 exist to terminate respondent's parental rights. N.C.G.S. § 7B-1111(b) (2025)

(amended in 2025 to remove "cogent" but applying the same burden of proof); *id.* §
7B-1109(f) (2025).

"After an adjudication that one or more grounds for terminating a parent's
rights exist, the [trial] court shall determine whether terminating the parent's rights
is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2025). "The trial court's
assessment of a juvenile's best interests at the dispositional stage is reviewed solely
for abuse of discretion, and we review the trial court's dispositional findings of fact to
determine whether they are supported by competent evidence." *In re X.I.F.*, 297 N.C.
App. at 806 (cleaned up).

## IV. Discussion

### A. GAL

Respondent-mother argues "[t]he trial court abused its discretion in
terminating parental rights where the guardian ad litem failed to perform her
duties[.]" Specifically, respondent-mother contends "the record shows no action from
the [GAL] since the initial disposition hearing in 2021[,]" and alleges (1) the GAL
only prepared one report and went several years without submitting a court report;
and (2) that the attorney advocate failed to act in the GAL's "stead" during the
termination hearing where no one performed the function of advocating for the
children's best interest.

#### 1. Preservation

As a preliminary matter, "[i]n order to preserve an issue for appellate review,

a party must have presented to the trial court a timely request, objection, or motion . . . ." N.C. R. App. P. 10(a)(1). However, "[w]hen an appellant argues the trial court failed to follow a statutory mandate, the error is preserved, and the issue is a question of law and reviewed de novo." *In re J.C.-B.*, 276 N.C. App. 180, 192 (2021) (emphasis omitted); *see also In re M.G.B.*, 293 N.C. App. 568, 590 (2024) ("[W]hen a trial court acts contrary to a statutory mandate . . . the right to appeal the court's action is preserved." (alteration in original) (omission in original) (citation omitted)). Here, respondent-mother did not argue to the trial court that the GAL failed to fulfill her statutory duties and raises this issue for the first time on appeal.

One of the purposes of Chapter 7B of our General Statutes, often referred to as the juvenile code, is "[t]o provide standards . . . for ensuring that the best interests of the juvenile are of paramount consideration by the court and that when it is not in the juvenile's best interest to be returned home, the juvenile will be placed in a safe, permanent home within a reasonable amount of time." N.C.G.S. § 7B-100(5) (2025). Accordingly, section 7B-1200 establishes the GAL program, and section 7B-601(a) mandates that the trial court appoint a GAL to represent an alleged abused or neglected child. N.C.G.S. §§ 7B-1200, 7B-601(a) (2025). Section 7B–601(a) also mandates the appointment of an attorney advocate if the GAL is not an attorney to "assure protection of the juvenile's *legal* rights throughout the proceeding." *Id.* § 7B–601(a) (emphasis added); *see also In re J.H.K.*, 365 N.C. 171, 175 (2011) (An appointed attorney GAL "can perform the duties of both the GAL and the attorney advocate.").

- 11 -

The juvenile code articulates a GAL must:

> make an investigation to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs; to facilitate, when appropriate the settlement of disputed issues; to offer evidence and examine witnesses at adjudication; to explore options with the court at the dispositional hearing; to conduct follow-up investigations to insure that the orders of the court are being properly executed; to report to the court when the needs of the juvenile are not being met; and to protect and promote the best interests of the juvenile until formally relieved of the responsibility by the court.

N.C.G.S. § 7B-601(a).

We have concluded "that the [j]uvenile [c]ode imposes an implicit duty upon the trial court to ensure the role(s) of the guardian ad litem are performed as required by statute." *In re S.D.H.*, 296 N.C. App. 392, 402 (2024). Thus, in applying this principal, we have previously held various sections of the juvenile code—which have been read to or plainly require the trial court to consider information from the GAL—combined with section 7B-601(a), which details a GAL's duties, "create[s] a statutory mandate automatically preserving the right of appeal on this issue." *In re M.G.B.*, 293 N.C. App. at 591 (citation omitted) (holding 7B-601(a) combined with section 7B-906.1(c) of the juvenile code create automatic preservation of the issue on appeal). For example, in *In re S.D.H.*, we described:

> Sections 7B-601 and 7B-1108 do not explicitly state it is the trial court's responsibility to ensure the guardian ad litem performs its statutory duties; however, given the legislature's emphasis on providing permanence within a reasonable amount of time, we believe this goal is best

> served by the trial court monitoring the guardian ad litem's performance of its statutory duties in the first instance rather than waiting for appellate review.

296 N.C. App. at 402 (citations omitted).

Therefore, this same rationale is applicable here. We have previously read section 7B-1110(a) to require information from the GAL regarding the children's best interest and held that the trial court abused its discretion issuing a dispositional ruling without this information. *See id.* at 404. Likewise, GALs are bound by the same statutorily mandated duties under section 7B-601(a). *See id.* at 402–04. Accordingly, respondent-mother's argument that the GAL failed to uphold her duties at the termination of parental rights hearing is automatically preserved and we review this issue de novo.

## 2. *GAL Duties*

An appointed GAL must be "very hands on," and "acquire intimate knowledge pertinent to the best interests of the child." *In re R.A.H.*, 171 N.C. App. 427, 431 (2005) (cleaned up). This typically involves the GAL "interviewing the child, the parents, and any other persons relevant to the proceedings," and requires GALs to collaborate "with all parties to both determine what course of action was in the best interests of the child, and how best to pursue that course of action." *In re S.D.H.*, 296 N.C. App. at 401 (cleaned up).

During the dispositional phase of a juvenile proceeding, the GAL "must offer evidence, either written reports, testimony, or both, recommending to the trial court

which course of action is in the best interests of the child." *Id.* Without this information, "the trial court is not properly equipped to rule on best interests," and thus this Court would be in "no position to review the trial court's dispositional ruling." *Id.* Accordingly, GALs have both "out-of-court investigatory duties" and "in-court representational duties." *In re J.H.K.*, 365 N.C. 171, 178 (2011).

Although our Supreme Court has articulated that GAL program participants work as a team, *see id.* at 177, unlike a GAL, "[t]he attorney advocate is not charged with making the determination of what is in the best interest of the child," *In re R.A.H.*, 171 N.C. App. at 431. Rather, "[t]he job of the attorney advocate is to provide *legal* advice and assistance to the [GAL] in representing the minor child." *Id.* (emphasis added); *see also* N.C.G.S. § 7B–601(a). In termination of parental rights proceedings specifically, attorney advocates "perform the traditional role of a lawyer" and "assist the nonlawyer GAL" to protect the legal rights of the child. *In re J.H.K.*, 365 N.C. at 176. This assistance typically includes aiding "when appropriate, the settlement of disputed issues; [offering] evidence and [examining] witnesses at adjudication; [and] . . . [exploring] options with the court at the dispositional hearing." *Id.* (third alteration in original) (citation omitted).

Thus, the GAL "and the attorney advocate perform distinct and separate roles under the juvenile code." *In re R.A.H.*, 171 N.C. App. at 431. And "[t]he functions of the [GAL] and the attorney advocate are not sufficiently similar to allow one to 'pinch hit' for the other when the best interest of a juvenile is at stake." *Id.* However, in

cases where the GAL is an attorney, they "may be appointed to serve in a dual role as both the juvenile's GAL *and* attorney advocate." *In re R.D.*, 376 N.C. 244, 250 (2020).

This Court must presume prejudice and subsequently vacate and remand a termination of parental rights order, where a child is not represented by a GAL at "a critical stage in the termination proceedings." *In re R.A.H.*, 171 N.C. App. at 431; *see also In re S.D.H.*, 296 N.C. App. at 405 (vacating and remanding for a new disposition hearing). Our Supreme Court has explained representation from a volunteer GAL does not equate to physical presence at the termination hearing, but rather, that "the GAL had fulfilled [their] statutory duties by regularly filing reports describing the children's needs . . . and [their] recommendations concerning the best interests of the children in light of [their] ongoing investigation of their case." *In re R.D.*, 376 N.C. at 254 (cleaned up). Therefore, "[f]ailure by the GAL to fulfill their statutory duties may also require reversal." *In re M.G.B.*, 293 N.C. App. at 591.

"Beyond Section 7B-601(a)'s listing of the duties of the GAL, we have little guidance as to what constitutes sufficient investigation." *Id.* at 592. "In *R.A.H.* we held there was a presumption of prejudice when a GAL was not appointed prior to a termination hearing as that meant no field investigation had been performed, and neither the child nor the respondent-mother had been interviewed prior to the hearing." *Id.* (citing 171 N.C. App. at 431).

Similarly, in *In re S.D.H.* we described where "the record [was] devoid of

evidence offered by the [GAL,]" the children "lacked adequate representation of their best interests during a critical stage of this proceeding, we presume[ed] prejudice." 296 N.C. App. at 403. Accordingly, we held that "the trial court erred by ruling on disposition absent evidence of the [GAL's] investigation" because there was no indication in the record that the GAL "conducted a pretrial investigation or prepared reports[.]" *Id.* We reasoned,

> the trial court had an implicit duty to receive information or evidence from the Guardian ad Litem at the hearing to allow the trial court to determine whether the Guardian ad Litem sufficiently performed his duties. Otherwise, the trial court would have no input from the statutorily-appointed Guardian ad Litem regarding family dynamics and circumstances which are necessary to permit the trial court to make an informed decision as to the best interest of the Juveniles. To allow otherwise would defeat the purpose of the statutory requirement that a Guardian ad Litem be appointed.

*Id.* at 404.

Conversely, our Supreme Court has explained an attorney "competently fulfilled his role as a guardian ad litem" when he "investigated the case prior to the termination hearing by contacting the parties, visiting the child . . . at petitioner's home," "[went] to petitioner's workplace[,]" and "reported his observations to the trial court at the [termination] hearing." *In re C.J.C.*, 374 N.C. 42, 46 (2020). Further, our Supreme Court discussed the GAL in *In re J.H.K.* had fulfilled her statutory duties where she "regularly" filed reports and made "recommendations concerning the best interests of the children in light of her ongoing investigation of their case."

*In re R.D.*, 376 N.C. at 254 (citing *In re J.H.K.*, 365 N.C. at 177). Our Supreme Court stated *In re J.H.K.* further demonstrated a GAL can fulfill its " 'out-of-court investigatory duties' simply by submitting [their] written report to the trial court[.]" *Id.* at 255 (citing *In re J.H.K.*, 365 N.C. at 178). This Court has also held a GAL attorney advocate satisfied their statutory duties in an initial adjudication and disposition hearing where "a GAL report was not available only due to the newness of the case"; the GAL attorney advocate cross-examined witnesses and concurred with DSS's recommendations "sufficiently demonstrated that the GAL Program had actively investigated the case prior to the hearing" and the trial court was assured that the "GAL Program was actively 'on it.' " *In re A.N.L.*, 213 N.C. App. 266, 267, 269–70 (2011).

The facts of this case are more akin to *In re S.D.H.*. Here, the record on appeal reveals a single GAL report filed on 15 April 2021—exactly four years before the termination of parental rights hearing—and no subsequent or ongoing investigation by the GAL. Although GAL attorney advocate Wright cross-examined witnesses at the termination of parental rights hearing as related to respondent-mother's current compliance with her case plan, the record before us on appeal does not sufficiently demonstrate that the GAL had actively investigated the best interest of the children *prior* to the termination of parental rights hearing, outside of the hearing, or during the critical stage of the proceedings. *See In re A.N.L.* 213 N.C. App. at 270; *see also In re S.D.H.*, 296 N.C. App. at 403.

For example, nothing in the record on appeal reveals the GAL contacted respondent-mother prior to the termination hearing, visited the children at their placements prior to the termination hearing, went to respondent-mother's workplace prior to the termination, or reported any direct observations to the trial court at the termination hearing. *Cf. In re C.J.C.*, 374 N.C. at 46. Likewise, where no evidence demonstrates ongoing GAL investigation exists in the record, no regularly filed GAL reports exist on the record either. Thus, like *In re S.D.H.*, this Court has no indication in the record that the GAL "conducted a pre-trial investigation or prepared reports to assist the trial court in understanding the [j]uveniles' family dynamics or determining what was in their best interest" since 15 April 2021.[7] 296 N.C. App. at 403.

An attorney advocate and GAL *can* serve dual roles where the GAL program operates as a team, *see In re R.D.*, 376 N.C. at 250, but GALs have both statutorily mandated "out-of-court investigatory duties" and "in-court representational duties," *In re J.H.K.*, 365 N.C. at 178, that cannot always be satisfied by a dual GAL attorney advocate. Because the GAL attorney advocate failed to satisfy their out-of-court investigatory duties—like "mak[ing] an investigation to determine the facts, the

---

[7] The trial transcript reveals a DHHS social worker conducted a home visit at respondent-mother's new home 14 April 2025, the day before the termination of parental rights hearing, and respondent-mother provided the social worker with the lease to this new home on 11 April 2025. However, the record does not indicate any other phone calls, visits, or discussions with the children or anyone in proximity to the children by DHHS after its last report on 10 October 2023.

needs of the juvenile, and the available resources within the family and community to meet those needs; [and]. . . to conduct follow-up investigations to ensure that the orders of the court are being properly executed . . . "—the role of the GAL was not satisfied by the dual GAL attorney advocate. N.C.G.S. § 7B-601(a). *See also In re R.A.H.*, 171 N.C. App. at 431 ("The functions of [GAL] and the attorney advocate are not sufficiently similar to allow one to 'pinch hit' for the other when the best interest of a juvenile is at stake."). Accordingly, because the GAL failed to fulfill their statutory duties, we must presume prejudice and without disturbing the trial court's ruling on adjudication, vacate the order and remand for a new disposition hearing. *See In re S.D.H.*, 296 N.C. App. at 404–05.

**B. Best Interest Determination**

Respondent-mother also challenges the trial "court's conclusion that termination was in the children's best interest." Specifically, respondent-mother challenges that this conclusion is unsupported by competent evidence, and alleges the trial court made erroneous findings of fact related to the length of time the girls resided in their current placement. *See* N.C.G.S. § 7B-1110(a) (2025).

However, when children "lacked adequate representation of their best interests during a critical stage of this proceeding[,]" "a trial court cannot properly consider all relevant criteria set out in [s]ection 7B-1110(a) where it wholly lacks evidence from the guardian ad litem for the juveniles." *In re S.D.H.*, 296 N.C. App. at 403–04. Thus, "a trial court's ruling on disposition cannot be the result of a

reasoned decision absent evidence of a guardian ad litem's investigation and corresponding recommendations." *Id.* at 404. In these circumstances, trial courts abuse their discretion by concluding termination was in the best interest of the child without receiving evidence from a GAL. *Id.* Accordingly, we hold the trial court abused its discretion by concluding termination was in the best interest of the children absent evidence of investigatory evidence by the GAL attorney advocate prior to the termination of parental rights hearing. In accordance with this Court's holding in *In re S.D.H.*: "Rather than issuing a ruling under these circumstances, the trial court should have terminated the hearing, instructed the Guardian ad Litem to perform its duties, and set a later hearing date providing sufficient time for the Guardian ad Litem to investigate and develop best interest recommendations." 296 N.C. App. at 404.

## V.    Conclusion

Accordingly, we vacate and remand for a new disposition hearing.

VACATED AND REMANDED FOR NEW DISPOSITION HEARING.

Judges GORE and MURRY concur.

Report per Rule 30(e).